[No. B006164. Second Dist., Div. Four. Oct. 3, 1985.]

F & P GROWERS ASSOCIATION, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

**COUNSEL**

Gordon, Glade & Marrs and Williams S. Marrs for Petitioner.

Daniel G. Stone and Michael E. Hersher for Respondent.

Dianna Lyons, Daniel A. Garcia and Wendy Sones for Real Party in Interest.

## OPINION

**WOODS, P. J.**—F & P Growers, petitioner, an agricultural employer covered by the Agricultural Labor Relations Act (ALRA) (Lab. Code, § 1140 et seq.), seeks a writ of review under Labor Code section 1160.8 of the decision and order of the Agricultural Labor Relations Board (ALRB or Board) issued in *F & P Growers Association,* 10 ALRB No. 20 (1984). We have previously granted the petition for review, and for reasons we shall state below, we affirm the Board's determination.

In an earlier unfair labor practice case, 9 ALRB Nos. 22 and 28, case No. 69090, F & P Growers refused to bargain with the UFW (Union) because the company held a good faith doubt that the Union was supported by the majority of employees. The Union in case No. 69090 alleged that F & P violated section 1153, subdivision (e) of the act by refusing to bargain; we agreed with the Union, on the ground that the employer's good faith belief as to the loss of majority support was not available as a defense for refusal to bargain in cases arising under the ALRA. In its letter brief of July 12, 1985, F & P claims it has acceded to the court's decision in that regard, and has resumed bargaining with the Union.

In the case now before this court (10 ALRB No. 28) the Union complains that they were denied postcertification access by the growers and that the growers also refused them information related to access.

While the previously mentioned refusal to bargain case was still before the Board (9 ALRB Nos. 22 & 28), UFW requested that F & P resume negotiations. F & P informed the UFW that it would not grant postcertification access.

On February 23, 1983, UFW filed a charge alleging that F & P violated section 1153, subdivisions (a) and (e) of the act by refusing to permit the UFW access to the company's premises for the purpose of speaking to the bargaining unit employees concerning negotiations and their working conditions. Injunctive relief was requested on March 25. The ALRB obtained a temporary restraining order prohibiting F & P from denying postcertification access. The court then issued on April 6 a preliminary injunction prohibiting F & P from denying postcertification access and adding a requirement that F & P provide information to the UFW. The court also added a provision that it would consider dissolving the injunction when its decision in the preceding case issued. F & P provided access during the period of the injunction, but would not permit access until the Court of Appeal enforced the Board's decision in 9 ALRB No. 22.

On April 12, 1983, the UFW filed a charge, No. 83-CE-108-1-08, alleging that F & P violated section 1153, subdivisions (a) and (e) by refusing to provide information necessary for it to take postcertification access.

The ALRB conducted a hearing on May 3, 4, and 5, and found that F & P's conduct had violated section 1153, subdivision (a). The Board ordered them to allow access under certain conditions and to provide the UFW with certain information (10 ALRB No. 28).

The UFW called F & P nine times for information related to the taking of postcertification access; F & P had not granted requested access since May 12, 1983, nor had they granted requested information since May 13, 1983. We are advised that the growers are now granting access.

Petitioner is an association that harvests oranges for different land owners in groves between the towns of Fillmore and Piru. The easternmost and westernmost groves are about 20 miles apart and eight or nine miles separate the northernmost area from the southernmost area. Foremen get maps each day, but the groves have no markers or signs, and the foremen find out in the morning where they will work on a particular day. Employer buses transport most of the workers from different sites near their homes to the groves. Workers eat lunch on the buses which are frequently parked deep within the groves and out of sight of union representatives.

The facts show that F & P was uncooperative, and although they gave the UFW representatives public road names adjacent to the location of the crews, that information was inadequate to enable them to find the employees. The terrain was hilly and the foliage dense, making it difficult to find the crews with no more than F & P's limited directions.

■ We note that the court's power to review the factual findings of the Board is limited, and the findings are conclusive if supported by substantial evidence in the record as a whole. (*Abatti Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1980) 107 Cal.App.3d 317, 334 [165 Cal.Rptr. 887].) Therefore, we accept the Board's findings that the crews were difficult to find, and that F & P Growers were uncooperative.

Appellant F & P Growers argue that the denial of postcertification access herein and refusal to grant information are merely evidence of a refusal to bargain and therefore amounts to only a violation of section 1153, subdivision (e) and derivatively (a) of the act and is not a separate or independent violation of section 1153, subdivision (a) of the ALRA (Lab. Code, § 1144 et seq.). The ALRB and UFW argue that petitioners have committed an

independent violation of section 1153, subdivision (a) of the act by refusing to grant the UFW postcertification access and by refusing to give information necessary for taking access.

Section 1153, subdivision (a) and 1153, subdivision (e) of the ALRA reads as follows:

"It shall be an unfair labor practice for an agricultural employer to do any of the following:

"(a) To interfere with, restrain, or coerce agricultural employees in the exercise of the rights guaranteed in Section 1152.

". . . . . . . . . . . . . . . . . . . . . . . .

"(e) To refuse to bargain collectively in good faith with labor organizations certified pursuant to the provisions of Chapter 5 (commencing with Section 1156) of this part."

We agree with the growers that failure to grant access after certification is evidence of refusal to bargain (§ 1153, subd. (e)). The Board in *O.P. Murphy Produce Co., Inc.* (1978) 4 ALRB No. 106, held that a certified bargaining representative is entitled to take postcertification access at reasonable times and places for a relevant purpose related to the "duty to bargain," and "[W]here an employer does not allow the certified bargaining representative reasonable post-certification access to the unit employees at the work site, henceforth such conduct will be considered as evidence of a *refusal to bargain in good faith.*" (4 ALRB No. 106, p. 8; italics added.)

And, on page 9, the Board in *Murphy* reiterated, "Where a party's conduct causes delays, as well as where an employer refuses a labor organization reasonable access to the employees it represents, such conduct will be considered as evidence of a refusal to bargain." The Board in *Murphy* concluded, at page 11, that since the "principles concerning postcertification access" were not known to respondents at material times, no finding would be made "as to a refusal to bargain," as such, and the resulting order in *Murphy* appropriately contained no provision on refusal to bargain.

Therefore, it is clear from the language of *O.P. Murphy* that the type of conduct here complained of, denial of postcertification access, relates to "refusal to bargain collectively in good faith" and therefore violates section 1153, subdivision (e) of the act.

Furthermore, the California Supreme Court in *Agricultural Labor Relations Bd.* v. *California Coastal Farms, Inc.* (1982) 31 Cal.3d 469 [183

Cal.Rptr. 231, 645 P.2d 739], in dicta, recognized without criticism the reasoning in *O.P. Murphy*. The Supreme Court said that in the *O.P. Murphy* case, the ALRB recognized that the need for postcertification access "springs from a different source than organizational access—that it is based on *the right and duty of the exclusive representative to bargain collectively* on behalf of all employees it represents." (*Agricultural Labor Relations Bd. v. California Coastal Farms, Inc., supra,* at p. 476, quoting from 4 ALRB No. 106, at p. 3; italics added.)

Based on the above precedents, we hold that denial of postcertification access herein violates the right of the Union to bargain and amounts to a refusal to bargain on the part of the employer (§ 1153, subd. (e)).

We agree with the contention of the Board and UFW that failure to grant postcertification access herein was also a separate violation of section 1153, subdivision (a). In the *O.P. Murphy* case, *supra,* there were additional kinds of improper conduct on the part of the growers, consisting of (1) photographic surveillance by the employer of the Union representatives and (2) attempts by the employers to have the Union representatives arrested. It was these additional forms of coercive behavior in *Murphy* that constituted a violation of section 1153, subdivision (a). In the case at bar, there was no conduct analogous to the conduct in *Murphy*. Nevertheless, cases decided after *O.P. Murphy* have found that denial of postcertification access is in itself a violation of section 1153, subdivision (a) of the act, or that under the proper set of circumstances, denial of postcertification access would be a violation of section 1153, subdivision (a) of the act.

In *Sunnyside Nursery, Inc.* (1980) 6 ALRB No. 52, there were additional forms of conduct, such as illegal surveillance, that the Board found to be an section 1153, subdivision (a) violation. However, the Board in *Sunnyside* upheld the administrative law officer's conclusion that respondent did not violate section 1153, subdivision (a) of the act by denying postcertification access *because* the Board found that respondent had presented prima facie evidence that effective alternative means of communication with the workers were available to the Union. The clear inference is that denial of postcertification access would violate section 1153, subdivision (a), where there are no alternate means of communication, and that denial of postcertification access, in and of itself, under certain circumstances, can violate section 1153, subdivision (a) and not just section 1153, subdivision (e) of the act.

The facts of *Sunnyside* are distinguishable from the case at bar. In *Sunnyside,* respondent employers made the following prima facie showing that alternative means of communication were available to the Union: A number

of the employees in Sunnyside were stable, year round employees, the employees all entered and left work through a central gate allowing them to be personally contacted, and there was a communication committee making contact during employees' breaks.

In the instant case, there is no similar showing of alternate means of communication with the employees, so under the reasoning of *Sunnyside,* it follows that section 1153, subdivision (a) of the act is violated by denial of postcertification access.[1]

The more recent ALRB case of *Robert H. Hickan* (1982) 8 ALRB No. 102, also supports a finding of a violation of section 1153, subdivision (a) by denial of postcertification access. In *Hickan,* the Agricultural Labor Relations Officer found that respondent violated section 1153, subdivision (a) by denying the right of access to a UFW representative, when (1) that representative tried to contact workers, and (2) when the employers engaged in the surveillance of the Union representative. The Board in *Hickan* also found that respondent had violated section 1153, subdivision (a) of the act by the conduct of its supervisor in (1) denying the UFW representative access and (2) engaging in surveillance of the UFW representative. Thus, although there was surveillance by the employer in *Hickan,* the Board appeared to consider independently the surveillance and the denial of postcertification access as a violation of section 1153, subdivision (a).[2] Our analysis of *Hickan* leads us to conclude that denial of postcertification access is a violation of section 1153, subdivision (a) of the act, whether or not there is also surveillance of the Union representative by the grower.

Thus, the Board appears to have extended its reasoning since the *Murphy* case to find violations of section 1153, subdivision (a), as well as of section 1153, subdivision (e) of the act, where there is a denial by the growers of postcertification access. We follow the reasoning of the Board and conclude that there was a violation of section 1153, subdivision (a), as well as section 1153, subdivision (e), by denial of postcertification access in the case at bar. Additionally, the failure to provide the Union with information related to the taking of access also violated section 1153, subdivision (a), as well as section 1153, subdivision (e) of the act.

In *Robert H. Hickan, supra,* (1982) 8 ALRB No. 102, the Board found that refusal to provide the UFW with information it requested about em-

---

[1]There is a rebuttable presumption that there are no adequate alternative means of communication (*O.P. Murphy Produce Co., Inc., supra,* 4 ALRB No. 106), and the employer must refute that presumption.

[2]*Hickan* also dealt with the construction of the term "employer premises." (8 ALRB No. 102 at pp. 13-14.)

ployees who worked on the property not solely owned or leased by respondent and failure to provide crop production information concerning those properties violated section 1153, subdivision (e) *and* section 1153, subdivision (a) of the act. Under the reasoning of *Hickan,* the failure of F & P Growers to provide information relative to the taking of access is also a violation of section 1153, subdivision (a) of the act.

We note that the violation of section 1153, subdivision (a) in the case of *Carian* v. *Agricultural Labor Relations Bd.* (1984) 36 Cal.3d 654 [205 Cal.Rptr. 657, 685 P.2d 701], concerning the failure to grant information in accordance with Board regulations that the employer supply the Union a prepetition list, does not support the Board's theory here. In *Carian* there was a regulation, and in the case at bar there was no regulation at the time of the Union representative's attempt to take access.

In our opinion, failure to comply with a specific, codified Board regulation, which required an employer to give very specific information in the form of a prepetition list, as in the *Carian* case, differs both in kind and degree from an employer's failure to grant information related to postcertification access.[3]

First of all, the Supreme Court in *Carian* relied on the fact that where the Union gave proper notice to the employers of intent to organize, this service "triggered" the requirements of the California Administrative Code.[4] (*Carian* v. *Agricultural Labor Relations Bd., supra,* 36 Cal.3d 654, at pp. 661-662, see fns. 2, 3.) Therefore, in *Carian,* the employer's duty emanated from a specific Board regulation and not from a general duty to supply information.

Secondly, the Supreme Court in *Carian* stated that failure to supply the prepetition list violated a specific "statutory mandate." The Supreme Court stated that the statute itself, section 1157.3,[5] requires the employers to maintain lists and to make names and addresses available on request. The Supreme Court reasoned that the Board's amplification of the statutory mandate by a regulation requiring current addresses and classifications actually

---

[3]In *Carian,* the employer also violated section 1153, subdivision (a) by unlawfully interrogating employees, but that aspect of the case is not relevant to our discussion. We note also that *Carian* dealt with organizational access rather than postcertification access. The right to organizational access springs from different sources than the right to postcertification access.

[4]Service of notice triggered title 8, sections 20310, subdivision (a) and 20910.

[5]Labor Code section 1157.3 reads as follows: "Employers shall maintain accurate and current payroll lists containing the names and addresses of all their employees, and shall make such lists available to the board upon request."

facilitates the implementation of the statute and was the source of the employer's duty to supply the prepetition list.

In the case at bench, there was no equivalent statute or regulation at that time delineating the kinds of information that the employers were required to give to facilitate the taking of postcertification access.[6] Therefore, the Supreme Court's holding in *Carian* v. *Agricultural Labor Relations Bd.*, *supra*, 36 Cal.3d 654, that a Board regulation and statute were violated, clearly distinguishes it from the case before us, and we do not here rely on the *Carian* case, or on the existence of a regulation to find that failure to grant the information here requested was a denial of section 1153, subdivision (a). Our holding follows *Hickan* to the effect that there is a violation of section 1153, subdivision (a) of the act by the failure to provide information related to the taking of postcertification access. This is not in any way inconsistent with the Supreme Court's holding in *Carian*.

In *Carian,* the failure to supply a prepetition list violated a statutory mandate and a Board regulation, and the duty to provide information was triggered by the regulation. In the case at bench, the failure to provide information necessary for taking access violated the act, because the duty to provide the information arose from the duty to grant postcertification access. Since the failure to grant postcertification access violates section 1153, subdivision (a) of the act, it follows that failure to provide the information necessary to make possible the taking of that access also violates section 1153, subdivision (a) of the act.

The fact that in *Carian* the duty to provide information arose from a different source, creates no conflict.

Finally, viewed logically, if the failure to grant access violates section 1153, subdivision (a), as well as section 1153, subdivision (e), under the rule of *Hickan* and *Sunnyside,* it follows that the duty to provide information making possible that access violates section 1153, subdivision (a) as well as section 1153, subdivision (e) of the act. Since the duty to grant information is related to, arises out of, and is derived from the duty to grant postcertification access, a contrary conclusion cannot be justified.

Since there is a separate violation of the section 1153, subdivisions (e) and (a) of the act, the contention of the growers that the case is subsumed is clearly unsubstantiated.

---

[6]Subsequent to the events at issue herein, effective January 3, 1985, the Board regulations require the agricultural employers in the citrus industry to provide certain information to a Union that has filed a notice of intent to organize. (Cal. Admin. Code, tit. 8, § 20900(e)(6)(D)(1) and (2) and (3). See also Cal. Admin. Code, tit. 8, § 20900(e)(6)(C).)

Finally, the growers argue that the Board must first promulgate a regulation authorizing postcertification access in order to find a violation of section 1153, subdivision (a) for denial of access. In *San Diego Nursery Co. v. Agricultural Labor Relations Bd.* (1979) 100 Cal.App.3d 128 [160 Cal.Rptr. 822], the court held that an ad hoc administrative policy which authorized access by *ALRB agents* was invalid because such policy was not adopted pursuant to the rules and regulations authority of Labor Code section 1144. In the *San Diego Nursery* case, the UFW's filing of notice of intention to take access and to organize "triggered a second and further ALRB 'policy of external education' and the policy was of 'ad hoc origin.'" *San Diego Nursery* referred to access by the Board agents and does not assist the growers here. That case held that the *ALRB examiners* could not enter private premises for the purpose of worker education based on an ad hoc policy without a regulation. We do not find this applicable to the case at bar which involves entry by *union representatives.*

In *San Diego Nursery,* the court reasoned that an agency should not be permitted unconsented access without a regulation because "'rule making makes the *bureaucracy* more responsive to public needs and is an important brake on the growth of absolutism in the regime that now governs all of us.'" (*San Diego Nursery Co. v. Agricultural Labor Relations Bd., supra,* 100 Cal.App.3d at p. 143, italics added.)

Here, access is not being taken by a bureaucracy or by a public agency, but by Union workers or representatives. Therefore, the reasons for the court's disapproval of entry on to the employer's property in *San Diego Nursery,* based on an ad hoc "policy," do not apply here.

■ The Supreme Court in *Agricultural Labor Relations Bd. v. California Coastal Farms, Inc., supra,* 31 Cal.3d at pages 478-479, condoned adjudication rather than rule making where "the Board was merely attempting to find a temporary judicial remedy for a potentially volatile situation where lack of access was a major cause of growing tensions."

We see no reason to depart from the general rule that the choice between proceeding by general rule or adjudication lies primarily in the informed discretion of the administrative agency, particularly so where the bureaucracy itself is not involved. (*Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 413 [128 Cal.Rptr. 183, 546 P.2d 687].) The Board has since promulgated a rule which became effective January 3, 1985, to cover these circumstances. But at the time of the events presented in this case, the Board was attempting to deal temporarily with an immediate sit-

uation, where the growers refused to cooperate with the Union and provide the information needed to permit access.

The Board's order is affirmed.

McClosky, J., and Arguelles, J., concurred.