[Civ. No. 5603. Fifth Dist. Oct. 22, 1982.]

PUBLIC EMPLOYMENT RELATIONS BOARD,
Plaintiff and Respondent, v.
MODESTO CITY SCHOOLS DISTRICT, Defendant and Appellant;
MODESTO TEACHERS ASSOCIATION, Defendant and Respondent.

[Civ. No. 5605. Fifth Dist. Oct. 22, 1982.]

MODESTO CITY SCHOOLS DISTRICT, Plaintiff and Appellant, v.
MODESTO TEACHERS ASSOCIATION,
Defendant and Respondent.

COUNSEL

Breon, Galgani & Godino, Keith V. Breon, Diana K. Smith and Martha Buell Scott for Defendant and Appellant and Plaintiff and Appellant.

Biddle, Walters & Bukey, Walters, Bukey & Shelburne, Robert G. Walters and Christian M. Keiner as Amici Curiae on behalf of Defendant and Appellant and Plaintiff and Appellant.

Dennis M. Sullivan, Jeffrey Sloan, Ronald E. Blubaugh and Elaine B. Feingold for Plaintiff and Respondent.

Kirsten L. Zerger, Raymond L. Hansen, Diane Ross and Ramon E. Romero for Defendant and Respondent.

## Opinion

**ZENOVICH, Acting P. J.**—In 5 Civil No. 5605, Modesto City Schools District (District) appeals from the court's denial of injunctive relief against the Modesto Teachers' Association (Association) during a time when the Association was engaged in a strike against the District. In 5 Civil No. 5603, the District appeals from the issuance of an injunction on behalf of the Public Employment Relations Board (PERB) against the District.[1] This injunction ordered the District to reopen bargaining in certain areas and refrain from instituting certain unilateral actions. It was conditioned to an injunction ordering the teachers back to work.

### THE FACTUAL BACKGROUND

On March 4, 1980, Association went on strike against District. Negotiations between District and Association had commenced on June 16, 1979. Impasse was declared in September 1979. The previous collective bargaining agreement expired on August 31, 1979.

When mediation was unsuccessful, the dispute was certified for factfinding. Factfinding hearings were conducted in November and December 1979 and a factfinding report was issued on January 30, 1980.

Following the issuance of the factfinding report, District took the position that negotiations were over and that it no longer had any obligation to exchange proposals. District refused a request by Association to enter into post-factfinding mediation.

On February 25, 1980, District unilaterally adopted a series of policies relating to wages, hours and working conditions. It was District's contention that all unilateral actions either adopted the factfinding recommendation or adopted District's "last best offer." District and Association were in vigorous dispute about whether the District's actions on February 25 were indeed the implementation of its last best offer or something different. PERB contended that its investigation produced information strongly indicating that some of the February 25 actions were different from the District's last offers. Association and PERB contended that the Association made several concessions in its proposals in the latter part of February and the early part of March 1980.

On the day the strike began, District filed an unfair practice charge against the Association, accusing Association of violating Government

---

[1]The appeals were consolidated pursuant to our order.

Code section 3543.6, subdivisions (a), (b), (c) and (d),[2] by striking. At the same time, the District requested PERB to seek injunctive relief against the Association's work stoppage.

On March 6, 1980, Association filed three unfair practice charges against District, accusing it of violating section 3543.5, subdivisions (a), (b), (c) and (e), and section 3543.1, subdivision (c). Association requested PERB to seek injunctive relief against the District in order to block the alleged unilateral changes made by District on February 25 and to compel negotiations.

On March 7, 1980, before PERB made its decision regarding District's desire for an injunction against the striking teachers, District filed a complaint seeking a temporary restraining order and preliminary injunction against Association.

After an initial phase of investigation, PERB, on March 10, 1980, determined that it had insufficient information to seek injunctive relief against either District or Association. PERB directed a further investigation and solicited from both parties the answers to a specific set of questions. Two days later, after receiving these responses, PERB concluded there were adequate grounds to seek injunctive relief.

On March 12, 1980, PERB, in decision No. IR 12, concluded that it was probable that District violated section 3543.5, subdivision (c), by refusing to meet and negotiate with Association over concessions and new proposals that Association offered following exhaustion of statutory procedures to break impasse. PERB also found that it was probable that District violated section 3543.5, subdivision (c), by unilaterally changing some terms and conditions of employment. Furthermore, PERB found that the Association's work stoppage "appears to be a protective response to an employer's unfair practices." However, PERB stated, "Unconditional injunctive relief against the employer alone would not completely stabilize the negotiating relationship between the parties." Noting that Association had demonstrated a desire to resolve differences at the negotiation table by making numerous proposals and counterproposals on significant issues following factfinding, and noting that District had met with Association to hear its ideas even though it felt it had no duty to enter into further negotiations, PERB found that the ultimate purpose of the Educational Employment Relations Act (EERA) (§ 3540 et seq.) would best be served if District and Association would resolve their disputes at the negotiating

---

[2]All statutory references are to the Government Code unless otherwise specified.

table. Thus, PERB determined that District's obligation to resume negotiations and to rescind its unlawful unilateral actions should be conditioned upon the reciprocal obligation of Association to end its work stoppage.

On the same date, March 12, the superior court issued an order to show cause and a temporary restraining order against District. Following the recommendation of PERB, District was ordered to refrain from failing to negotiate on those items before the parties on which there was a material change in Association's position subsequent to the publication of the factfinder's report. District was also ordered to refrain from implementing any unilateral changes other than those set forth in its last best offer to Association.

In a separate action instituted on the same date, PERB also obtained an order to show cause and a temporary restraining order against Association's strike, conditioned upon District's abandonment of its unfair negotiating practices.

It was District's contention that the wording of the restraining order was too vague; hence, the District prepared to return to court to seek reconsideration or dissolution of the order pending clarification. However, on the day of District's request for an order shortening time in order that a motion to reconsider or dissolve might be heard, PERB filed a lengthy amendment to its complaint, and the order shortening time was not granted. PERB's amendment to its complaint alleged additional information in support of its request for injunctive relief. This amendment provided details to support the contention that there had been a variety of changes in position on numerous subjects since the unilateral implementation by District on February 25. Moreover, the amendment stated that "The exact status of the current negotiations is not confusing . . . . The district knows what those concessions and new proposals are . . . . [¶] It must be remembered that on neither side of this contract dispute do we have novices to the negotiation process."

On March 27, 1980, a hearing was held which encompassed the injunction sought by PERB against the District and the Association, as well as the injunction against the Association sought by the District.

PERB, analogizing to cases decided under the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.), contended that it could still be an unfair labor practice for an employer to refuse to negotiate in good faith after impasse. It was PERB's contention that while District had the right to

unilaterally impose conditions of employment consistent with its last best offer and that it could not be compelled to change that, District, nonetheless, could still be required to negotiate further in good faith subsequent to impasse.

Association contended that it was not for the court to make the final determination of whether or not an unfair practice existed, but rather, the court need only determine that there was reasonable cause to believe that a violation of the act occurred before rendering some temporary interim relief to maintain the situation pending the final determination.

Also analogizing to federal authority, Association contended that after impasse, "once there has been a material or substantial change of circumstances the duty to bargain is reimposed." Association pointed out that District's imposition of a 6 percent pay increase and a number of other rules and unilateral acts inconsistent with the last best offer were per se unlawful even under the National Labor Relations Board (NLRB). Additionally, Association reminded the court that there were a number of concessions made by Association after factfinding and before the strike, which under the NLRA would be material changes requiring District to resume bargaining, at least as to those points where concessions had been made.

District argued that there would be irreparable injury if the court issued the injunction against the District. District also argued that the proposed injunction was so vague that it would render compliance difficult and impossible.

The court noted that it was not in a position to make policy in this area. The court pointed out that PERB indicated it may very well be an unfair practice for an employer to refuse to negotiate in good faith where there has been a material or substantial change in position on the employees' part even subsequent to impasse. The court, however, noted that it was not in a position to resolve ultimately whether or not that is, in fact, the law. The court did note that PERB considered the issue seriously and considered it important enough to seek an injunction to avoid the possibility that an unfair labor practice would thereafter occur.

Following this March 27 hearing, the court modified the temporary restraining order to enjoin the District from implementing any unilateral changes other than those determined by PERB to be lawful or other than those that the parties should agree to be implemented or the 6 percent increase in pay already in effect. In addition, the court enjoined the District

from failing to negotiate upon request on those subjects on which there was a material change in the Association's position.

On the issue of PERB's injunction against the striking teachers, the court deferred to PERB on the ground that PERB still had jurisdiction. Thus, the court ordered that the teachers be enjoined from "calling, and engaging in, continuing, sanctioning, inducing, aiding, encouraging, abetting or assisting any strike, sympathetic or otherwise, walkout, slow down, or work stoppage, of any nature against the [District], or intentionally interfering with such District by agreeing in concert with others not to work for the District."

Finally, the court, on March 27, indicated that it was going to find that it lacked jurisdiction to issue an injunction against the Association sought by the District in its March 7 complaint.

On May 5, 1980, the court issued its order which provided as follows:

"1. The District, its agents, employees, representatives, officers, and all corporations, unincorporated associations and natural persons acting in active concern and participation with any of them, are enjoined from implementation of any unilateral changes within the scope of negotiations which were made on February 25, 1980, and March 25, 1980 other than (1) those that may hereafter be determined in the course of proceedings before PERB to be lawful, (2) the 6% increase in pay which has already been implemented, or (3) those that may hereafter by agreement of the parties be implemented.

"2. The District is further enjoined from failing to negotiate with the Association upon request on those subjects on which there has been a material change in the Association's position after the fact-finding report was issued on January 30, 1980.

"3. The District, its agents, employees, representatives, officers, and all corporations, unincorporated associations, and natural persons acting in active concert and participation with any of them is enjoined and restrained from doing or attempting to do, directly or indirectly by any means, method or device whatsoever, any of the acts enjoined in paragraphs 1 and 2 hereof and each subdivision thereof during the pendency of this action."

On the same date, the court entered a final order enjoining Association from encouraging and continuing any work stoppage against the District. This was conditioned to the above injunction against the District.

### 5 CIVIL No. 5605 DISCUSSION

▮ District's sole contention in this appeal is that the trial court erred when it concluded that it did not have initial jurisdiction to grant the injunction sought by the District against the striking teachers.[3]

District bases its contention that PERB did not have exclusive original jurisdiction on three arguments. First, District contends that PERB only has exclusive original jurisdiction over conduct arguably prohibited or protected by the EERA and strikes are neither prohibited nor protected by the terms of the EERA. Second, the holding in *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838] that PERB had exclusive original jurisdiction over strikes before the completion of impasse does not apply in the instant case because the strike occurred after the completion of statutory impasse procedures. And third, District contends that public policy dictates that PERB should have no jurisdiction in postimpasse strikes because the "public interest lies in minimizing interruptions of educational services, and in maintaining their quality and continuity."

Association contends that as long as PERB could *reasonably* determine that the strike in the instant case was arguably an unfair practice under the EERA, PERB did have exclusive jurisdiction over the strike.

PERB contends that a strike following completion of impasse procedures may arguably be an unfair practice; thus, it has initial jurisdiction.

▮ Initially, we note that District's invocation of PERB's jurisdiction by filing unfair practice claims did not confer jurisdiction upon PERB. While estoppel may operate to confer jurisdiction over parties to a controversy, the jurisdiction over the subject matter cannot be conferred by consent, waiver or estoppel. (See *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; 1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 10, p. 534.)

▮ We begin our discussion by noting that all parties rely on the landmark decision by the California Supreme Court in *San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d 1. In *San Diego,* the court held that precedent developed under the NLRA is applicable in cases arising under state labor laws where "parallel conflicts" between the court and the

---

[3]The court did not officially dismiss the complaint, thereby relinquishing all jurisdiction over the matter; the court clearly determined that it was required to defer to the jurisdiction of PERB.

state agency arise regarding preemptive jurisdiction. (*Id.,* at p. 12.) The court noted that there are marked similarities between the EERA and NLRA. Both are administered by full-time boards. Both boards employ general counsel, have rulemaking power, as well as authority over questions of representation, and can investigate, adjudicate and issue orders against unfair practices. Additionally, courts that review or enforce those orders must treat board findings as conclusive if supported by substantial evidence. (*Ibid.*)

In the *San Diego* case, the teachers sought a writ of review seeking annulment of contempt orders that punished them for conducting a strike against the San Diego Unified School District in violation of a restraining order and a preliminary injunction. When the injunction was issued by the court, both the teachers association and the district had filed unfair practice charges against each other with the then Educational Employment Relations Board (now PERB). No PERB hearing or other action had ensued. The defense was failure to exhaust EERA remedies. The Supreme Court annulled the contempt orders on the ground that PERB had exclusive initial jurisdiction to determine whether the strike was an unfair practice and what, if any, remedies the board should pursue. The court found that the teachers association *may* have committed at least two of the unfair practices forbidden an employee organization that is recognized as an exclusive representative: (1) failure to negotiate in good faith (§ 3543.6, subd. (c)) and (2) refusal to participate in the impasse procedure (§ 3543.6, subd. (d)). (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d at p. 8.)

Furthermore, the court in *San Diego* held that PERB could furnish relief equivalent to that available in a court action. The district had asserted that PERB would be concerned only with its "narrow" negotiating process and, therefore, strike-caused harm would be overlooked. As this court has interpreted the *San Diego* case, "A teacher strike does not present insurmountable relief problems, PERB having broad powers, including the right to seek injunctive relief on the request of a party to a complaint." (*Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259, 271 [177 Cal.Rptr. 888].)

The "EERA gives PERB discretion to withhold as well as pursue, the various remedies at its disposal. Its mission to foster constructive employment relations (§ 3540) surely includes the longrange minimization of work stoppages." (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d 1, 13.) "PERB may conclude in a particular case that a restraining order or injunction would not hasten the end of a strike (as

perhaps neither did here) and, on the contrary, would impair the success of the statutorily mandated negotiations between union and employer. A court enjoining a strike on the basis of (1) a rule that public employee strikes are illegal, and (2) harm resulting from the withholding of teachers' services cannot with expertise tailor its remedy to implement the broader objectives entrusted to PERB." (*Ibid.*)

While recognizing that both the EERA and the California Supreme Court have established that PERB has initial exclusive jurisdiction to determine whether certain conduct is an unfair practice under the EERA, District, nonetheless, contends that PERB does not have exclusive original jurisdiction over strikes occurring after statutory impasse procedures have been completed, as in the instant case. District desires to restrict the *San Diego* holding to strikes occurring prior to the time statutory impasse procedures have been completed. We are not persuaded.

We find nothing in the *San Diego* case stating that its holding specifically should be limited to strikes occurring prior to the time impasse procedures have been concluded. The only statement specifically limiting its holding is found at the end of the opinion, "Our holding is limited to injunctions against strikes by public school. employee organizations recognized or certified as exclusive representatives (§ 3540.1, subd. (e))." (*San Diego, supra,* 24 Cal.3d 1, 14.) Furthermore, as the court stressed in *San Diego,* the exclusive initial jurisdiction is "amply implied by the comprehensiveness of the EERA scheme, . . ." (*Id.,* at p. 12.) In addition, the court specifically referred to section 3541.5, which expressly provides for the exclusive jurisdiction in PERB to decide what is an unfair practice and how it shall be remedied.

PERB agrees with District's contention that PERB has preemptive jurisdiction only in the situations where the conduct at issue is arguably either "protected or prohibited" by the EERA. However, PERB rejects District's contention that conduct occurring after the exhaustion of impasse procedures is neither arguably prohibited nor arguably protected by the EERA.

Both Association and PERB refute District's contention that the obligation to negotiate in good faith concludes with the publication of the factfinder's report. Under District's theory, PERB has no jurisdiction after the completion of impasse proceedings because the negotiating process has finished. We will analyze this contention in the companion case, *infra.* However, we note that PERB contends that the obligation to negotiate is a continuous one. PERB contends the duty to negotiate in good faith

continues even after completion of the factfinding process. PERB argues that although the obligation to negotiate may become dormant during an impasse situation, it will revive whenever changed circumstances indicate that an agreement may be possible. Here, it is alleged the changed circumstances came about when the District refused to negotiate in good faith in view of concessions made by the Association on a number of items after the issuance of the factfinder's report.[4]

The doctrine of preemption is a procedural safeguard against conflicting application of labor law principles. However, the doctrine of preemption also serves another function: "The course of events that have eventuated in the enactment of a comprehensive national labor law, entrusted for its administration and development to a centralized, expert agency, as well as the very fact of that enactment itself, reveals that a primary factor in this development was the perceived incapacity of common-law courts and state legislatures, acting alone, to prove an informed and coherent basis for stabilizing labor relations conflict and for equitably and delicately structuring the balance of power among competing forces so as to further the common good." (*Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274, 286 [29 L.Ed.2d 473, 482, 91 S.Ct. 1909].)[5]

The rationale for this preemption doctrine can be fully demonstrated by the remarks of the trial court in the instant case. A reading of the record reveals that in the proceedings below all of the parties in the instant case were ably and competently represented by experienced labor law lawyers. In addition, the record indicates that the trial judge below was competent, thorough, and informed. However, the trial judge himself had to

---

[4]As counsel for PERB stated at oral argument, "the Board adopted the meet and confer approach under the old Winton Act." In effect, District took the position that it need not negotiate any further.

[5]District relies on *Kaplan's Fruit & Produce Co.* v. *Superior Court* (1979) 26 Cal.3d 60 [162 Cal.Rptr. 745, 603 P.2d 1341] for its proposition that the doctrine of preemption does not mandate that PERB should have had initial exclusive jurisdiction in the instant case. We are not persuaded.

We believe the key to *Kaplan's* was reliance on federal authority holding that local courts traditionally have jurisdiction to enjoin interference with access in a suit by a private litigant *and obstruction of customer access by a primary picket line is not an unfair practice.* (*Id.,* at pp. 68-74.) Thus, since *primary* picket line obstruction of customer access is *not* protected or prohibited by the Agricultural Labor Relations Act (ALRA), the doctrine of preemption did not come into play. The key to *Kaplan's* was that the *Agricultural Labor Relations Board* (ALRB) in that situation would not be able to provide a full and effective remedy. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 200 [172 Cal.Rptr. 487, 624 P.2d 1215].) As noted above, a teachers' strike does not present insurmountable relief problems for PERB. (*Fresno Unified School Dist.* v. *National Education Assn., supra,* 125 Cal.App.3d 259, 271.)

acknowledge that he was not knowledgeable in the field of labor law. "I have no background in labor relations. There isn't a person at counsel table that isn't far better informed than I am in this case."

This concession by the trial court amply exemplifies the need to defer to the expertise of PERB so it can perform its mandated duty to effectuate and implement the purposes and policies of the EERA—that is, to promote the improvement of personnel management and employer-employee relations within the public school systems of California. (§ 3540.)

Moreover, even though the cases following *San Diego* did not rule on the specific issue before us, these cases all point to a general scheme of recognizing the importance of deferring to the expertise of PERB in appropriate circumstances. We stated in *Fresno Unified School Dist., supra,* 125 Cal.App.3d 259, 271, "A preemption rule is of overriding significance. The rule must stand even against the argument that to require PERB proceedings to be commenced and PERB to seek injunctive relief might cause irreparable injury should PERB decide against seeking court injunctive relief." In *Fresno,* the district appealed from a judgment of dismissal of its action against the teachers' association. At issue was the right of the school district to prosecute a superior court action for damages against the teachers without first exhausting the remedies provided by EERA. We held that because section 3541.5 confers exclusive jurisdiction of the unfair practice issues on PERB, the trial court properly dismissed the action as to the alleged torts. Analogizing to federal authority, however, we held that as to the contract cause of action the trial court had *concurrent* jurisdiction pursuant to Labor Code section 1126. (*Fresno, supra,* at p. 274.) Nonetheless, we held the action should be stayed rather than dismissed. "The stay protects the status quo of the contract issues pending the resolution of PERB of the unfair practice issues which are within its exclusive jurisdiction . . . ." (*Ibid.*) Similarly, in the case before us, the court below did not dismiss the complaint, but rather dropped it from the calendar, deferring to the jurisdiction of PERB and further noting that the issue was moot because the court was issuing an injunction against the teachers sought by PERB. (See also *Council of School Nurses* v. *Los Angeles Unified School Dist.* (1980) 113 Cal.App.3d 666 [169 Cal.Rptr. 893]; *Leek* v. *Washington Unified School Dist.* (1981) 124 Cal.App.3d 43 [177 Cal.Rptr. 196].)

In conclusion, we hold that public policy would best be served if PERB retained initial exclusive jurisdiction over any action which is arguably prohibited or protected by EERA. As will be discussed *infra,* we conclude there was reasonable cause for PERB to believe the District violated the

duty to bargain in good faith in violation of section 3543.5, subdivision (c). We do not believe it would serve public policy to have numerous superior courts throughout the state interpreting and implementing statewide labor policy inevitably with conflicting results. One of the basic purposes for the doctrine of preemption is to bring expertise and uniformity to the task of stabilizing labor relations. The purpose of EERA is to promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California. PERB was established to effectuate and implement this purpose. The events in the instant case, in our opinion, demonstrate the effectiveness of the EERA scheme and the doctrine of preemption. For, in fact, within eight days after the initiation of the teachers' strike and within five days after the District filed its complaint, the court enjoined the striking teachers in an action sought by PERB after it had carefully considered and investigated the situation to determine what would best resolve the dispute between the parties. Coupling this injunction with an order that the District continue to bargain was a rational, practical solution to resolving a serious labor dispute. Thus, the court did not err in deferring to the jurisdiction of PERB.

## 5 CIVIL NO. 5603 DISCUSSION

■ All parties before us recognize that there is federal and state authority for the proposition that the trial court's decision to grant injunctive relief in a labor case should be affirmed if the trial court did not abuse its discretion either in (1) determining that it had reasonable cause to believe an unfair practice had been committed, or (2) in fashioning an order which was just and proper. (*Hoffman* v. *Cement Masons Union Local 337, etc.* (9th Cir. 1972) 468 F.2d 1187, 1192; *Agricultural Labor Relations Bd.* v. *Ruline Nursery Co.* (1981) 115 Cal.App.3d 1005, 1013 [171 Cal.Rptr. 793].)

Section 3541.3, subdivision (j), provides that PERB shall have power: "To bring an action in a court of competent jurisdiction to enforce any of its orders, decisions or rulings or to enforce the refusal to obey a subpoena. Upon issuance of a complaint charging that any person has engaged in or is engaging in an unfair practice, the board may petition the court for appropriate temporary relief or restraining order." Although not worded identically, both section 10(j) of the NLRA and section 1160.4 of the California Labor Code grant similar authority to seek injunctive relief to the NLRB and the Agriculture Labor Relations Board (ALRB).[6] If the pertinent language of both the Agriculture Labor Relations

---

[6]Section 10(j) of the NLRA (29 U.S.C. § 160(j)) provides that: "The [National Labor Relations] Board shall have power, upon issuance of a complaint as provided in subsection

Act (ALRA) and the NLRA parallels that of the EERA, cases construing the former are persuasive precedent in interpreting the latter. (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d 1, 12-13; *Agricultural Labor Relations Bd.* v. *Laflin & Laflin* (1979) 89 Cal.App.3d 651, 663 [152 Cal.Rptr. 800].) We believe that reference to both the NLRA and ALRA provides guidance for this court in deciding the appropriate standard by which a superior court is to determine the appropriateness of an injunction requested by PERB.

Before injunctive relief may be granted on the request of either the NLRB or ALRB, the trial court must determine that there exists *reasonable cause* to believe an unfair labor practice has been committed and that the relief sought is *just and proper.* (*Hoffman* v. *Cement Masons Union Local 337, etc., supra,* 468 F.2d 1187, 1192; *Agricultural Labor Relations Bd.* v. *Ruline Nursery Co., supra,* 115 Cal.App.3d 1005, 1012; *Agricultural Labor Relations Bd.* v. *Laflin & Laflin, supra,* 89 Cal.App.3d 651, 671.) Naturally, the court retains discretion to issue any order that is "just and proper" under the circumstances and is not bound by the recommendation of the NLRB or the ALRB. We believe that traditional equitable considerations would certainly come into play during this part of the test. (See *Agricultural Labor Relations Bd.* v. *California Coastal Farms, Inc.* (1982) 31 Cal.3d 469, 479 [183 Cal.Rptr. 231, 645 P.2d 739].)

In construing whether there is reasonable cause to believe an unfair labor practice has been committed within the meaning of the NLRA and the ALRA, it has been stated that PERB is required to sustain a minimal burden of proof: "It need not establish an unfair labor practice has in fact been committed (*Boire* v. *Pilot Freight Carriers, Inc.* (5th Cir. 1975) 515 F.2d 1185, 1189 [34 A.L.R.Fed. 803]), nor is the court to determine the merits of the case (*Agricultural Labor Relations Bd.* v. *Laflin & Laflin, supra,* 89 Cal.App.3d 651, 671). Rather, the *reasonable cause* aspect of the two-pronged test is met if the ALRB's theory is neither *insubstantial* nor

---

(b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."

Labor Code section 1160.4 provides in relevant part as follows: "The [Agricultural Labor Relations] board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition the superior court . . . for appropriate temporary relief or restraining order. Upon the filing of any such petition, the board shall cause notice thereof to be served upon such person, and thereupon the court shall have jurisdiction to grant to the board such temporary relief or restraining order as the court deems just and proper."

*frivolous. (Boire v. Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185, 1189.) In this respect we review the superior court's finding to determine whether there was 'clear error.' (*Boire v. Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185; see also *Angle v. Sacks* (10th Cir. 1967) 382 F.2d 655.)" (*Ruline Nursery Co., supra,* 115 Cal.App.3d 1005, 1012-1013.)

Thus, the key question is *not* whether PERB's theory would eventually prevail, but whether it is *insubstantial* or *frivolous. (Id.,* at p. 1013.)

█ In the trial court, PERB contended that the District failed to negotiate in good faith in violation of section 3543.5, subdivision (c). This section provides that it shall be unlawful for a public school employer to refuse or fail to meet and negotiate in good faith with an exclusive representative. Section 3540.1, subdivision (h), defines meeting and negotiating as: "[M]eeting, conferring, negotiating, and discussing by the exclusive representative and the public school employer in a good faith effort to reach agreement on matters within the scope of representation and the execution, if requested by either party, of a written document incorporating any agreements reached, which document shall, when accepted by the exclusive representative and the public school employer, become binding upon both parties . . . ."

PERB also contended that the District was in violation of the duty to negotiate in good faith because (1) it refused to negotiate after concessions were made by the Association, and (2) the District made unilateral changes inconsistent with its last best offer to the Association.

While the EERA provides for an elaborate set of statutory impasse procedures (§§ 3548-3548.8) and also requires the parties to meet and negotiate in good faith, EERA does not specifically provide that the duty ends after the completion of the statutory impasse procedures or provide that the duty is a continuous one. Although we feel it premature at this time to address the issue of when the duty to negotiate in good faith ceases, we deem it necessary to pursue the question, at least, to the extent of determining whether PERB's theory is insubstantial or frivolous. (See *California Coastal Farms, Inc., supra,* 31 Cal.3d 469, 475.)

District's major contention is that EERA does not specifically require the resumption of bargaining after impasse; therefore, PERB has no standing to seek injunctive relief. District contends that the duty to meet and negotiate does not extend indefinitely and that PERB cannot claim to enforce such activity until agreement is reached. District argues that EERA contemplates that either an agreement will be reached or impasse resolution procedures

will be followed. It is the District's contention that the terms of EERA provide a role for PERB "up to, and during the impasse procedure, but not following the completion of impasse." We disagree.

The California School Boards Association and the Association of California School Administrators, as amici curiae, contend that school boards are not required by EERA to negotiate interminably past impasse and may, pursuant to section 3549, make a final decision as to wages, hours and conditions of employment. They contend that there are practical differences between the public and private sector which require that NLRB case authority not be adopted "whole-cloth." They contend there is no policy rationale for allowing the Association to evade the crucible of impasse and force the District to bargain interminably past statutory impasse procedures. The California School Boards Association and Association of California School Administrators argue that when PERB linked the injunction to halt the strike in the instant case with an injunction creating a mandatory duty upon the school district to negotiate, "PERB implicitly gave sanction to the threat of a strike as a weapon usable by public school employees."

We find nothing in EERA intimating that the duty to bargain automatically ceases at the end of the impasse procedures. Even though section 3548.4 may not *mandate* post-factfinding mediation, it does provide that mediation efforts may continue. Moreover, as discussed *infra,* District's contention that, under the instant circumstances, it had no duty to bargain after issuance of a factfinding report is without support in the law and would undermine the collective bargaining process established by the EERA to improve employer-employee relations within the public school system of California. If, after exhausting statutory impasse procedures, an employer's duty to bargain permanently ceases under all circumstances, the impasse procedure will, as the Association contends, become an empty charade.[7]

In our opinion, section 3543.7[8] cannot be read, as District contends, as establishing a test for when the duty to negotiate terminates. At most, it

---

[7]District's reliance on *Dickinson Ed. Ass'n* v. *Dickinson Public Sch.* (N.D. 1977) 252 N.W.2d 205 is misplaced. In that case, the court held that the school board's assumption that the mere publication of a factfinder's report concluded the contract negotiation process was in error. Importantly, the parties had not agreed that impasse had been reached before unilateral action taken by the school board. (*Id.,* at p. 211.)

[8]Section 3543.7 provides as follows: "The duty to meet and negotiate in good faith requires the parties to begin negotiations prior to the adoption of the final budget for the ensuing year sufficiently in advance of such adoption date so that there is adequate time for agreement to be reached, or for the resolution of an impasse."

establishes a schedule by which districts and associations should try to reach agreement in time for adoption of the final budget. This goal is often unattainable and, in fact, many contracts expire at odd times during the course of the year.

We find District's reliance on section 3549[9] rather convoluted. District contends that since the placement of section 3549 follows the impasse procedures set forth in sections 3548-3548.8, this indicates that PERB has *no role* following the completion of impasse. Read in isolation, section 3549 would appear to mean that the EERA has no meaning. Under District's rationale, as soon as mediation and factfinding are completed, the duty to negotiate in good faith evaporates. We find no authority supporting this contention nor do we find any authority which would compel us to implement section 3549 giving District the right to refuse to bargain after post-factfinding concessions made by Association.

Indeed, it is well settled in the private sector that a legal impasse can be terminated by nearly any change in bargaining-related circumstances. "An impasse is a fragile state of affairs and may be broken by a change in circumstances which suggests that attempts to adjust differences may no longer be futile. In such a case, the parties are obligated to resume negotiations and the employer is no longer free to implement changes in working conditions without bargaining. Just as there is no litmus-paper test to determine when an impasse has been created, there is none which determines when it has been broken. . . . Most obviously, an impasse will be broken when one party announces a retreat from some of its negotiating demands." (Gorman, Labor Law (1976) p. 449; see also *N. L. R. B.* v. *Sharon Hats, Incorporated* (5th Cir. 1961) 289 F.2d 628.)

As the Association contends, and we concur, since collective bargaining is at the heart of the EERA scheme, it is necessary that PERB embrace the concept of the duty to bargain which revives when impasse is broken. "The existence of impasse resolution procedures does not negate this conclusion. Whether one considers impasse to happen at the beginning, the end, or throughout the statutory impasse resolution mechanism, at some point that impasse can be broken, just as in the private sector. When it is, the duty to bargain revives."

---

[9]Section 3549 provides in pertinent part as follows: "The enactment of this chapter shall not be construed as making the provisions of Section 923 of the Labor Code applicable to public school employees and shall not be construed as prohibiting a public school employer from making the final decision with regard to all matters specified in Section 3543.2."

Here, Association and District met several times following the issuance of the factfinding report. While District agreed to meet with the Association, it still maintained that it had no obligation to engage in the give and take of collective bargaining. Moreover, it appears undisputed that District's reaction to Association's concessions was a refusal to negotiate. District thus asserted it was free to have the final say in all matters that were subjects for negotiation.

After reviewing all information available in March 1980, PERB concluded that Association's concessions were sufficient to break the impasse which formerly existed between District and Association. Before us, PERB argues, "Collectively, the post-factfinding concessions of the Association marked a significant shift in its negotiating posture. The Association had dropped its demand for a short contract term, scaled down its demands for health benefit improvements and offered a union security clause significantly less favorable than what it originally had sought. Yet, despite these changes in the Association's position, the District refused to resume negotiations." We conclude there was reasonable cause to believe that District was in violation of its duty to bargain in good faith. Association's concessions were not insubstantial or frivolous and broke the legal impasse.

As a separate and independent ground for injunctive relief, PERB also contended that it had reasonable cause to believe the District had violated section 3543.5, subdivision (c), by the unilateral changes in wages, hours and working conditions made on February 25, 1980. It was District's contention that all of the unilateral actions either adopted the factfinding recommendations or adopted District's last best offer.

An employer cannot change matters within the scope of representation without first providing the exclusive representative notice and opportunity to negotiate. Unilateral change in these areas prior to impasse is seen as a violation of the duty to negotiate in good faith because it is tantamount to a refusal to bargain. However, once impasse is reached, the employer may take unilateral action to implement the last offer the union has rejected. (*Labor Board* v. *Katz* (1962) 369 U.S. 736, 745 [8 L.Ed.2d 230, 237, 82 S.Ct. 1107].) The employer need not implement changes *absolutely identical* with its last offer on a given issue. However, the unilateral adoptions must be reasonably comprehended within the preimpasse proposals. (*Taft Broadcasting Co.* (1967) 163 N. L. R. B. No. 55, enforced *sub nom.*, *American Fed. of Television and Radio Artists* v. *N. L. R. B.* (D.C. Cir. 1968) 395 F.2d 622.) While the employer has no license to grant a wage increase *greater* than any offered the union at the bargaining table, the

employer may institute a wage increase identical with one which the union has rejected as too low. (*Labor Board* v. *Katz, supra,* 369 U.S. 736, 745 [8 L.Ed.2d 230, 237].)

We believe PERB had sufficient information before it in March 1980 to establish reasonable cause to believe that the District violated the duty to bargain in good faith by unilaterally implementing changes inconsistent with its last best offer. For example, it is uncontested that the driver training salary increase approved on February 25 was $1,000 more than District's last prior offer. Furthermore, there was reasonable cause for PERB to conclude that District unilaterally adopted a health and welfare benefit package which was inconsistent with the last offer to the Association. District's position in factfinding was that it would maintain current benefits, including the increased cost of premiums. However, the health and welfare plan submitted on February 25 contained a $70 cap for increased premium costs. As PERB states, "The difference between the two positions—potentially adding many dollars to employee costs of living—is too great to argue that the package ultimately implemented was 'reasonably comprehended within' the original offer."

In addition, there was reasonable cause for PERB to conclude that the District had unilaterally abolished the contractual grievance procedure and substituted in its place a District-devised grievance procedure. Under the old grievance procedure, Association had standing to file grievances concerning any scope of bargaining item. Under the new policy, Association had no standing to file any grievance. The previous contract called for advisory arbitration. The unilateral adoption called for a "review board" for grievances. Unlike the old contract, the February 25 adoption stated that PERB's decision in step IV is binding only on the grievant and his or her representative, rather than on all parties. Before us, District concedes that the "grievance procedure adopted by the district on February 25, 1980, does contain variations from the procedure embodied in the previous contract, which had been the district's 'last-best offer.' " District's contention that the differences concern "form" rather than "substance" is without merit.

We conclude the trial court below did not abuse its discretion in its determination that there was reasonable cause to believe that District violated section 3543.5, subdivision (c), by (1) refusing to meet and negotiate with Association over concessions and new proposals that Association offered following exhaustion of statutory impasse procedures, and (2) by unilaterally changing some terms and conditions of employment inconsistent with its last best offer. We find this meets the first of the two-pronged

test as set out in *Agricultural Labor Relations Bd.* v. *Ruline Nursery Co.*, *supra,* 115 Cal.App.3d 1005, 1012-1013. The first of the two-pronged test requires the board to sustain a minimal burden of proof. It need not establish an unfair labor practice has in fact been committed nor is the court to determine the merits of the case. (*Ibid.*) Moreover, the reasonable cause aspect of the two-pronged test is met if the ALRB theory is neither insubstantial nor frivolous. (*Id.,* at p. 1013.) Having found that there was reasonable cause to support PERB's contention that the District had committed an unfair labor practice, we now examine whether the court properly exercised its discretion in determining that the injunctive relief was "just and proper."

District contends, and PERB does not disagree, that the superior court has discretion in determining whether to grant PERB's request for injunctive relief even after PERB has reasonable cause to believe that an unfair practice has been or is being committed. District, among other things, contends that the court did not follow the traditional equitable standards for using an injunction. District argues that the court did not balance the hardship of the parties. We disagree.

The question before us is to determine whether the injunction against the District was just and proper. As the court in *Agricultural Labor Relations Bd.* v. *Ruline Nursery Co., supra,* 115 Cal.App.3d 1005, 1015 succinctly stated:

"This standard has often been described: '[Where] there exists a probability that the purposes of the Act will be frustrated unless temporary relief is granted . . . [or] the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless, [the just and proper standard is met] . . . . Preservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board. [Citations.]' (*Angle* v. *Sacks, supra,* 382 F.2d 655, 660; see also *Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185.)

"The status quo has been defined as the ' "last uncontested status which preceded the pending controversy." ' (*Minnesota Mining and Manufacturing Company* v. *Meter* (8th Cir. 1967) 385 F.2d 265, 273.) The Board need not demonstrate the existence of a 'rare emergency situation.' (*Angle* v. *Sacks, supra,* 382 F.2d 655, 658-659.) Although injunctive relief is an extraordinary remedy, it may be used whenever either an employer or union has committed unfair labor practices which, under the circumstances, render any final order of the Board meaningless or so devoid of force that

the remedial purposes of the Act will be frustrated. (*Boire* v. *Pilot Freight Carriers, Inc., supra,* 515 F.2d 1185, 1192; *Wilson* v. *Milk Drivers & Dairy Employees U., Local 471* (8th Cir. 1974) 491 F.2d 200.)''

Notwithstanding PERB's judgment that relief is proper, the court may consider *any fact* pertinent to the issue of whether the requested relief is just and proper. Referring to ALRB requested relief, the California Supreme Court recently stated: '' 'The court may properly consider any fact relevant to the question whether the requested relief is just and proper, including the nature of the alleged unfair labor practice (i.e., whether it is violent, coercive, etc., and whether it is ongoing or consisted of a single act), its probable effect in relation to the status quo and the statutory objectives, the nature of the relief sought, the timing of the request, the circumstances of the parties, and the probable effects upon them of the order requested. [Citations omitted.]' '' (*California Coastal Farms, Inc., supra,* 31 Cal.3d 469, 479, quoting from *Agricultural Labor Relations Bd.* v. *Laflin & Laflin, supra,* 89 Cal.App.3d 651, 679.)

The purpose of the EERA is to ''promote the improvement of personnel management and employer-employee relations within the public school systems in the State of California . . . .'' (§ 3540.) Although injunctive relief is an extraordinary remedy, it may be used whenever either an employer or a union has committed unfair labor practices which, under the circumstances, would render any final order of PERB meaningless. Moreover, preservation and restoration of the status quo are appropriate considerations in granting temporary relief. Preservation and restoration of the status quo were achieved by the injunctions in the instant case.[10] First, the teachers were ordered back to work. Second, coupled with this injunction, District was ordered to refrain from making certain unilateral changes and was enjoined from failing to negotiate with Association on those subjects on which there was a material change in Association's position after the factfinding report was issued. These injunctions were entirely just and proper. As was stated in an ALRB setting: ''If employees who have suffered unfair labor practices must wait, in some instances, years before a final disposition by the Board is rendered, the clear message to remaining employees and agricultural workers at large is that the ALRB is not able to meaningfully aid those who are unlawfully discharged or penalized for participating in collective bargaining. Here there exists a significant possibility the Act's remedial purposes would be frustrated in just this manner. This

---

[10]The court's order against District requires maintenance of the status quo, except that the order permits continuation of a 6 percent pay increase which District unilaterally put into effect. PERB correctly points out that this would not hamper the negotiating process.

supports the court's finding the injunction to be just and proper.'' (*Agricultural Labor Relations Bd.* v. *Ruline Nursery Co., supra,* 115 Cal.App.3d at pp. 1016-1017.)

As to the District's contention that the order in the instant case was vague and overly broad, the trial court, on March 27, took great pains to frame an order which was not improperly vague. In fact, the order was modified specifically to cure certain problems of vagueness. The court found that it was making an order sufficiently definite so that the parties could comply. On May 1, 1980, Association sought to supply information which would be used to specifically identify those unilateral actions which District should be enjoined from taking. District objected to the introduction of this evidence and the court determined to go forward with the order as modified. The final order added the February 25 and March 25 dates to insure clarity. We do not believe this order so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. Moreover, we do not believe the injunction is impermissibly overbroad. The added dates helped to define the terms.

■ District then contends that PERB did not have authority to seek the relief it did because PERB has never ruled on the exact nature of either the duty to bargain following issuance of the factfinding report or the right to take unilateral action after impasse. Relying on *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392 [128 Cal.Rptr. 183, 546, P.2d 687] and *San Diego Nursery Co.* v. *Agricultural Labor Relations Bd.* (1979) 100 Cal.App.3d 128 [160 Cal.Rptr. 822], District argues that PERB may not proceed by means of an administrative complaint and applications for injunctive relief in the instant case, but rather, must proceed only by following the statutory procedures which are described for rulemaking activities. (See § 11370 et seq.) Not so.

District's contention is disposed of in *California Coastal Farms, Inc., supra,* 31 Cal.3d 469. In this case, the court held that the union was properly granted limited access to an employer's property, even though the ALRB had not adopted a rule or regulation with respect to strike access, relying on Labor Code section 1160.4, which vests the trial court with jurisdiction to grant the board temporary relief if the court deems it is just and proper. Coastal Farms had argued that in the absence of an express rule promulgated by the ALRB under its rulemaking powers, the trial court's order granting limited strike access was an abuse of discretion. (*California Coastal Farms, Inc., supra,* at p. 477.) The court held that the board's use of adjudication rather than rule making was appropriate, since it had not decided whether the right of strike access was applicable in all cases, or even if it existed. The

court stressed that the board was merely attempting to find a temporary judicial remedy for a potentially volatile situation: "This case was, in fact, particularly suited to the use of adjudication—judicial or administrative. Strike access was a new concept—one with which the ALRB had no experience. By proceeding through adjudication, the ALRB should be better able to develop a policy that encourages communication and reduces violence." (*Id.*, at p. 479.)

The same rationale applies in the instant case. Section 3541.3, subdivision (j), provides that PERB may petition a court of competent jurisdiction for "appropriate temporary relief or restraining order." Furthermore, section 10(*l*) of the NLRA permits a temporary injunction pending the NLRB's final determination of a controversy "even though the specific questions involved may be of first impression." (*Hoffman* v. *Cement Masons Union Local 337, etc., supra,* 468 F.2d 1187, 1192.)

As was stated in *California Coastal Farms, supra,* 31 Cal.3d 469, 475: "[I]t is important to note that we do not here consider the ultimate power of the ALRB to permit—by adjudication or rulemaking—union access to the employer's property in order to talk to nonstriking workers during an economic strike. The true focus of this case is on the power of the trial court, in granting a TRO or preliminary injunction restraining certain union activities, to permit limited union access. *The issue, in short, is one of trial court power, not agency power.*" (Italics added.) Likewise, we are not called upon here to rule on the ultimate merits of the underlying unfair-labor-practice charges before PERB.

The actions of PERB in seeking injunctions against both the Association and the District in the instant case were designed to find a *temporary judicial remedy* for a potentially volatile situation. PERB was acting pursuant to the powers it was mandated to carry out. The trial court was well within its judicial discretion in granting the temporary relief requested.[11]

---

[11]District contends we should take judicial notice pursuant to Evidence Code section 452 of certain documents indicating that the Association and District, subject to the events surrounding these appeals, began bargaining for the 1980-1981 school year.

The District contends that its sole reason for requesting that this court take judicial notice of certain public records was to point out that remand by this court for modification of the order issued by a superior court would be a futile gesture. We are not persuaded.

We find no connection between the documents sought to be judicially noticed and the jurisdictional issues before us on these appeals. The documents refer only to events subsequent to the factual situations leading to the appeals. The District's motion for judicial notice is denied.

The judgments are affirmed.

Andreen, J., and Hammer, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1982. Richardson, J., voted to deny under compulsion of *San Diego Teachers' Assn.* v. *Superior Court* (1979) 24 Cal.3d 1.

---

*Assigned by the Chairperson of the Judicial Council.